Smith, J.
The question presented is, whether the court of common pleas erred in sustaining the motion to discharge the attachment which had been issued on the filing of the petition and of the affidavit for an attachment at the commencement of the action, and under which certain property had been attached and a garnishee served.
On March 21, 1891, the Belmont Mining Co. filed its petition against Rogers, the allegations of which were substantially as follows: It averred that it was a corporation under the laws of the state of Kentucky. That on February 20, 1888, the defendant being desirous of inducing the plaintiff to buy from C. P. Costigan and wife, who were then the owners thereof, a certain gold mine in the state of Colorado, to induce the plaintiff to do so, on that day and at divers times before and since, represented to the plaintiff, and to Harry Worthington, H. H. Hoffman, H. P. Thompson and *306 A. J. Marlday, all of them directors of plaintiff and its agents, tliat said mine was a rich and valuable mine, and that the product thereof, as shown by the mill returns, showing the amount of gold produced therefrom, (which mill returns said Rodgers produced and showed to said plaintiff and to said officers), was rich in value — said Rogers at said time representing that said mill returns, as compared with the amount of ore taken out and crushed, showed a product of about $50 per ton. Said Rogers also representing that said mill returns were the result of the crushing of about 800 tons of ore, whereas in truth and in fact, as was at all of .said times well known to said Rogers, the amount of ore that had been taken out and crushed for the purpose of producing the gold shown in said mill returns, was in excess of 1400 tons; and that thereby, if said Rogers had shown said fact, it would have been apparent that said ore, instead of •producing an average of $50 per ton, had produced an amount not exceeding an average of $25 per ton, and that -therefrom it would have appeared that said mine, instead of being a rich and valuable mine, was substantially worthless, .and that the product therefrom was not sufficient to pay the •expenses of working the same. And that the said Rogers at the same time and with the same purpose, represented to the plaintiff and to said other persons, that he had no interest in the sale of said property, and that his sole compensation for inducing the plaintiff to purchase said property was that he would thereby receive a commission from this plaintiff, which said Rogers stipulated for, and which this plaintiff agreed to, and would thereby become and be this plaintiff’s agent for said property — -said Rogers representing at the same time that he held an option for the purchase of said property, at and for the price of $150,000, which said Rogers averred and stated to this plaintiff could easily be produced from said mine, so that after the making of the first payment of $15,000, all additional payments could be paid *307 from the product of the mine without calling on the plaintiff for further payments. But plaintiff says that in truth and in fact at those times Rogers had a contract with the Costigans, whereby it was agreed that in case Rogers should sell the property to any purchaser for $150,000, the Costigans were to pay to the wife of Rogers a large sum of money. And thereupon, relying upon said representations, on said February 20, 1888, the plaintiff authorized Rogers to purchase for it said property for $150,000 — $15,000 to be paid on the delivery of the deed, $25,000 in six months thereafter, and the remainder in sums of $25,000 every two months till fully paid — -and Rogers was authorized to pledge the property for said deferred payments; with interest.
It is not directly averred in the petition that the purchase was actually made in pursuance of this authority, or that any part of the $15,000 was paid, but this further allegation is made, from which it perhaps may be implied that the purchase was made and part of the price paid. It says: “And plaintiff further says that thereafter, it being at all times impossible to realize from the working of said mine sufficient to pay the expenses of working the same, and it being impossible to realize therefrom any sum or sums applicable upon the payment of the purchase money therefor, this plaintiff then, out of its own means, laid out in the expenses of working said mine, in addition to the product thereof, and in the payment of the deferred installments of the purchase money, to the vendors, Emily Costigan and G. P. Oostigan, her husband, the further sum of $25,000, and that none of said sums would have been paid out or expended by this plaintiff unless this plaintiff had relied upon the truth of the representations herein before set out as made by said Albert Rogers, all to the damage of this plaintiff in the sum of $40,000.“ Wherefore judgment is prayed for that sum.
The affidavit which was filed by plaintiff alleged as the ground for the attachment, “that the defendant, Alfred G. *308 Rogers, fraudulently incurred the obligation for which the suit is brought, as will more fully appear from the petition, filed herewith, the contents of which this affiant has read, and which this affiant is acquainted with, and the facts therein stated are within affiant’s personal knowledge and are true.”
The motion to discharge the attachment was based on the grounds: “1st, That the allegations of the affidavit were untrue; and, 2d, Because of other errors and defects in the affidavit. ’ ’
On the hearing of this motion affidavits were presented by each of the parties, and the court discharged the attachment, and the plaintiff excepted. A bill of exceptions containing all of the evidence was allowed, and a petition in error filed by the plaintiff to reverse the order so made.
We are of the opinion that in a case like this, the court is bound to look at the evidence thus brought into the record by the bill of exceptions to see if the order thus made was right. If it. is manifestly wrong it should be reversed. It is only the Supreme Court which is not bound to review the weight of the evidence, and determine whether on that the order was erroneous.
It is manifest from what lias been said, that the action was one to recover damages for deceit alleged to have been practiced by the defendant upon the plaintiff. That by means of representations made by Rogers to the plaintiff, which were untrue, and which when made were known to the defendant to be untrue, the plaintiff was induced (at least) to authorize Rogers to purchase for it the gold mine on the terms named, and perhaps the petition is open to the construction, if not looked at critically, that the purchase was made and that the plaintiff expended $40,000 therefor which sum, by reason of the falsity of the representations, was lost to the plaintiff.
In looking at the allegations of the petition it appears that *309 as to some of the representations alleged to liavo been-made by the defendant, they are not such as the plaintiff was justified in relying upon, in accordance with well settled rules of law. The representations, if false and known to be false, must be of an existing ascertainable fact, as distinguished from a mere matter of opinion — on which latter the party to whom they are made are not authorized to rely. Of this character we think, are the allegations averred to have been niade, that the mine in question was a good and valuable one, and that the product from it would be so great that after the $15,000 were paid, it would be sufficient to realize enough for the deferred payments, and that plaintiff then would not have to pay anything further from its own means. This could be nothing else than a mere expression of opinion by Rogers, and even if he (Rogers) did not'believe what he said, and plaintiff did, he has no claim against Rogers on account of this. But as a matter of fact, we think the evidence does show that it was a rich and valuable mine, and was worth what was paid for it, and it is not at all sure but that if a proper expenditure had been made by plaintiff, that the opinion of Rogers as to its productiveness would have been realized.
There are other allegations in the petition as to representations made by defendant, which, if shown to have been false, and they were known by him to be false, and which were relied upon by plaintiff, and thereby it was induced to make this purchase to its injury, would entitle the plaintiff to recover damages in an action for deceit, for the injury-suffered. One of these is the allegation that the amount of gold, as shown by the mill returns produced, was the product of but 800 tons of crushed ore from the mine, showing an average of about $50 per ton, while in fact it was the product of over 1400 tons, and did not averge $25 per ton. The other is the allegation as to his representation that he had no interest in having plaintiff purchase the mine from the *310 owners under his option, other than the commission he was to receive from the plaintiff, when at the time he had a contract with the owners of the mine that if he made a sale of it at the price named, his wife was to receive a large sum.
Such representations and conduct, if false, would be as to existing facts, and fraudulent.
But when we examine the testimony submitted to the court on the hearing of the motion, can it be said that the finding of the court was clearly against the weight of the evidence ? Indeed, as the fact of the making of these representations and of all fraudulent conduct, was clearly and explicitly denied by Rogers, it would seem that the burden of proof to establish the fraud was upon the plaintiff. In so far as the alleged representations as to the mill returns are concerned, several of the officers of the plaintiff testified that they were made substantially as averred in the petition.. And we do not understand that Rogers in his evidence denies this. But he does aver clearly that the statements made by him as to this were founded on information given to him by those parties who professed to have knowledge of the matter, and on due inquiry by him, and that he fully and implicitly believed that the representations so made by him were true. If so, no action for deceit.would lie on such representations, for there would be no fraud on his part in making them. But in addition to this,, we do not think that it is shown that the representations so made by him were untrue, or that the quantity of gold spoken of by him as produced from 800 tons of ore was the product of 1400 tons, or of more than 800.
As to the second ground, also we think there was a failure of proof It is true that the same witnesses for plaintiff say that Rogers made the representations alleged as to his having no interest in the contract, and they further say, (and the affidavit of each is as to all of these matters in exactly the same language), that since the happening of the things *311 detailed in the preceding parts of this affidavit, he has ascertained the fact to be that at the time said Rogers' ‘ made the representations set ont, as in the petition, ’ ’ that said Rogers had a contract with the said George Costigan and Emily Costigan, his wife,” made in the name of Rogers' wife, for the purpose of concealing the fact that he had such interest, by which contract, he, Rogers, was to receive a large portion of the proceeds of said sale if effected. _
Harmon, Colston, Goldsmith & Hoadhj. for plaintiffs in error.
D. Thew Wright, for defendant in error.
The only fact here stated is that affiant discovered this to be so. There is no fact stated which shows that any such contract ever existed. There is not a syllable in any of the other evidence that tends to establish the truth of the allegation as to any such contract having ever been made. The judgment or order of the court of common pleas discharging the attachment will therefore be affirmed.
Judge Swing is further of the opinion that the petition of the plaintiff does not state a good cause of action. That it does not allege, as it should have done.that relying upon the representations so made, the plaintiff was thereby induced to make such purchase, and pay the $15,000 cash payment and the other amounts subsequently paid thereon, and that but for such representations the purchase or the payments thereon would not have beenmade.